UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRICE A. PRUITT,** | ) |
| **Plaintiff,** | ) ) ) |
| vs. | ) ) Civil Action Number ) **2:16-cv-01444-AKK** |
| **SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,** | ) ) ) ) |
| **Defendant.** | ) ) |

## MEMORANDUM OPINION

Brice A. Pruitt brings this action pursuant to Section 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA"). This court finds that the Administrative Law Judge ("ALJ") applied the correct legal standards and that his decision — which has become the decision of the Commissioner — is supported by substantial evidence. Therefore, the court **AFFIRMS** the decision denying benefits.

### I. PROCEDURAL HISTORY

Pruitt protectively filed his application for Title XVI Supplemental Security Income on October 27, 2009, alleging a disability onset date of October 1, 2004 due to human immunodeficiency virus, major depression, and right hip and knee problems. (R. 33, 308). After the SSA denied his application, Pruitt requested a

1

hearing before an ALJ. (R. 174–83, 189–92). The ALJ subsequently denied Pruitt's claim. (R. 156, 164). The Appeals Council granted Pruitt's request for review, and remanded the case to a different ALJ for further consideration. (R. 169–73). After the second ALJ denied Pruitt's application in April 2013, (R. 61), the Appeals Council denied review, (R. 7–11), rendering the ALJ's opinion the final decision of the Commissioner. Pruitt sought review by filing a civil action in federal district court and, pursuant to a voluntary remand motion by the Commissioner, Judge C. Lynwood Smith, Jr. of this court remanded for further proceedings. Relevant here, Judge Smith directed the ALJ to "clarify the limits of [Pruitt's] ability to interact with supervisors, and [to] obtain supplemental testimony from a vocational expert to clarify the effect of the assessed limitations on [Pruitt's] occupational base." (R. 909). On remand, Pruitt had a hearing before a third ALJ, after which the ALJ issued a May 2016 decision denying benefits. (R. 830–57). Pruitt did not seek review by the Appeals Council, and the ALJ's decision became the final decision of the Commissioner. (R. 831). Pruitt then filed this action pursuant to § 405(g) on September 1, 2016. Doc. 1.

## II. STANDARD OF REVIEW

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal

2

standards, *see Lamb v. Bowen*, 847 F.2d 698, 791 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

## III.   STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 416(i)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five-step analysis. 20 C.F.R. §§ 404.1520(a)–(f). Specifically, the Commissioner must determine, in sequence:

(1) whether the claimant is currently unemployed;

(2) whether the claimant has a severe impairment;

(3) whether the impairment meets or equals one listed by the Secretary;

(4) whether the claimant is unable to perform his or her past work; and

(5) whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "An affirmative answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of 'not disabled.'" *Id.* at 1030 (citing 20 C.F.R. §§ 416.920(a)–(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

## IV. The ALJ's Decision

In performing the five-step analysis, the ALJ determined that Pruitt met the criteria for Step One, because he had not engaged in any substantial gainful activity since his October 27, 2009 application date. (R. 835). Next, the ALJ acknowledged that Pruitt's impairments of "human immunodeficiency virus (HIV); degenerative disc disease of the lumbar spine; osteoarthritis of the right hip; bipolar II disorder, with atypical features, most recent episode depressed; and, antisocial personality disorder" met the requirements of Step Two. (R. 836). The ALJ then proceeded to the next step and found that Pruitt did not satisfy Step Three, because he did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.*) (internal citations omitted).

In this step, the ALJ considered sections 1.02 (major dysfunction of a joint), 1.04 (spinal disorders), 14.08 (HIV), 12.04 (affective or mood disorders), and

5

12.08 (personality disorders). (R. 836–37). The ALJ also considered the "paragraph B" factors[1] in evaluating Pruitt's psychological health, but found that Pruitt did not satisfy any of the criteria. (R. 838). Relevant here, the ALJ found that Pruitt has "moderate difficulties" with social functioning, as evidenced by Pruitt's testimony that "he has difficulty getting along with others and [that] several roommates had moved out because of his behavior, which included getting upset easily and yelling," and Pruitt's wife's report that Pruitt "had lost a job after an argument with a manager." (R. 837). However, the ALJ also noted Pruitt's successful five-year relationship with his wife, and Pruitt's ability "to interact with others when he shops and attends medical appointments." (*Id.*).

Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, he proceeded to Step Four, where he determined that, at his date last insured, Pruitt had the residual functional capacity ("RFC") to "perform light exertional level work" with the following additional limitations relevant to this action:

> [Pruitt] can remember short, simple instructions but is unable to deal with detailed or complex instructions. He can do simple, routine, repetitive tasks but is unable to do detailed or complex tasks. [He] is limited to making simple work-related decisions. He should have no interaction with the general public but can have occasional interaction

---

[1] "To satisfy the 'paragraph B' criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration." (R. 837).

> with co-workers and frequent interaction with supervisors. He is able to accept constructive, non-confrontational criticism; work in small-group settings; and accept changes in the workplace setting if introduced gradually and infrequently. . . . In addition to normal breaks, he will be off task five percent of an eight-hour workday in non-consecutive minutes. . . .

(R. 838–39).

The ALJ next determined that Pruitt had no past relevant work, as his earnings in 2008, 2009, 2013, and 2014 fell "below the level of substantial gainful activity." (R. 846). After considering Pruitt's age, education, work experience, and RFC, the ALJ determined that "there are jobs that exist in significant numbers in the national economy that [Pruitt] can perform." (R. 847). Accordingly, the ALJ found that Pruitt "has not been under a disability, as defined in the Social Security Act, since October 27, 2009." (R. 848).

## V. ANALYSIS

Pruitt raises three contentions of error. For the reasons below, the court rejects each contention and affirms the ALJ's decision.

### A. The ALJ's Alleged Failure to Clarify the Limits of Pruitt's Ability to Interact with Supervisors

Pruitt first contends that "the ALJ failed to follow the clear remand order from [Judge Smith] which specifically instructed the ALJ to clarify the limits of [Pruitt's] ability to interact with supervisors." (Doc. 12 at 3). As stated previously, however, the ALJ noted that Pruitt "can have . . . frequent interaction

with supervisors" and could handle "constructive . . . interaction with supervisors." (R. 846). This finding belies Pruitt's contention that the ALJ failed to follow Judge Smith's instructions. Rather than purportedly failing to address Judge Smith's order, it seems Pruitt's main contention is that the ALJ's RFC finding is erroneous. Pruitt maintains that he "obviously has at least some difficulty responding appropriately to supervision," doc. 12 at 6, and that the ALJ's determination that Pruitt could "frequently" interact with supervisors is unfounded *see id.*, in light of consultative psychologist William Beidleman's findings that "[i]t is likely that [Pruitt] would have difficulty responding appropriately to fellow employees and supervisors," (R. 1231).

The substantial evidence supports the ALJ's finding. For example, as the Commissioner points out, Pruitt "worked almost 30 hours a week for several months [in 2013] at [Wendy's] and only stopped working after a physical injury," (R. 841, 890, 1152, 1169, 1230), and also "worked about 10 hours a week as a stocker, but did not continue because of his limited ability to lift," (R. 841, 891). Moreover, the ALJ at least implicitly accounted for Pruitt's difficulties with authority figures by acknowledging in Pruitt's RFC his limited ability to function in a stressful work environment. Specifically, the ALJ remarked that Pruitt could handle constructive, non-confrontational criticism from supervisors, should only have to deal with infrequent, gradual changes, and should only be responsible for

making simple decisions and performing simple, routine, repetitive tasks. (R. 846). Finally, the ALJ's RFC finding is consistent with other medical evidence, including a report by psychologist Charles Lankford, Ph.D., who opined that Pruitt "retains the ability to understand and follow instructions, to adequately interact with supervisors and coworkers and adapt to a working environment." (R. 626). For all of these reasons, the ALJ's finding that Pruitt could "frequently" interact with supervisors, with the caveat that any criticism should be tactful and non-confrontational, is supported by substantial evidence.

Alternatively, at least one panel of the Eleventh Circuit, albeit in an unpublished opinion, has held that an ALJ is not required to find disability even after concluding that a claimant cannot get along with coworkers or supervisors. *See Thornton v. Comm'r, Soc. Sec., Admin.*, 597 F. App'x 604, 611 (11th Cir. 2015) ("While SSRs 85-15, 1985 SSR LEXIS 20 and 96-9p, 1996 SSR LEXIS 6 each recognized that unskilled work generally requires the ability to 'respond appropriately to supervision, coworkers, and usual work situations,' [these rulings] do not command a finding of disability in the absence of such ability."). *See also* SSR 85-15, 1985 SSR LEXIS 20, at *4 (noting that a substantial loss of the ability to "respond[] appropriately to supervision, coworkers, and usual work situations" would justify, but not require, a finding of disability). Accordingly, any error would be harmless.

**B. The ALJ's Alleged Failure to Afford Proper Weight to the Opinion of Dr. William Beidleman**

Pruitt contends next the ALJ failed to afford proper weight to the opinion of Dr. William Beidleman, a consultative psychologist who determined that Pruitt "would have difficulty responding appropriately to fellow employees and supervisors." (R. 1231). The court finds no reversible error because, as an initial matter, no deference is due to the opinion of a consultative examiner. *See Meade v. Astrue*, No. 8:09-cv-02027-T-27AEP, 2010 U.S. Dist. LEXIS 139669, at *10 (M.D. Fla. Dec. 17, 2010), adopted by 2011 U.S. Dist. LEXIS 3473 (M.D. Fla. Jan. 13, 2011) (quoting *Kirby v. Astrue*, 500 F.3d 705, 709 (8th Cir. 2007)) ("[A] consulting physician's opinion 'deserves no special weight.'"). Moreover, the ALJ, in fact, afforded "substantial weight" to Dr. Beidleman's opinion, (R. 845), and considered Dr. Beidleman's opinion that Pruitt "should be able to understand and remember instructions, but . . . likely would have difficulty responding appropriately to fellow employees and supervisors, as well as some problems coping with significant work pressures," (R. 843). For these reasons, the court finds no error.

**C. The ALJ's Alleged Misapplication of Legal Standards**

Finally, Pruitt takes issue with the following statement by the ALJ:

> The record does not support a finding of disability. The claimant's mental and physical symptoms have fluctuated, as would be expected over a period of more than five years, but the weight of

> the medical evidence does not establish a period of 12 months that his limitations have been greater than those set out in the residual functional capacity.

(R. 844).

According to Pruitt, "[a]lthough there is a durational requirement for Social Security eligibility — it is necessary for a claimant to have [an] underlying medical impairment that lasts for a period of 12 months — it is not necessary that a fluctuating medical condition remain at a level which [would] preclude work for 12 consecutive months." (Doc. 12 at 11). However, as the Commissioner correctly points out, the Supreme Court has interpreted the SSA's rules as requiring that any alleged disabling impairment render the claimant unable to engage in substantial gainful activity for a period of twelve months. *See Barnhart v. Walton*, 535 U.S. 212, 219 (2002) ("[T]he 'impairment[]' both must last 12 months and also must be severe enough to prevent the claimant from engaging in virtually any 'substantial gainful work.'"). *See also Davis v. Barnhart*, 186 F. App'x 965, 967 (11th Cir. 2006). Because the ALJ's interpretation is consistent with binding authority, Pruitt's contention fails.

## VI. CONCLUSION

Based on the foregoing, the court concludes that the ALJ's determination that Pruitt is not disabled and has the RFC to perform light exertional work with additional limitations is supported by substantial evidence, and that the ALJ

11

applied proper legal standards in reaching this determination. Therefore, the Commissioner's final decision is **AFFIRMED**. The court will enter a separate order in accordance with this Memorandum Opinion.

**DONE** the 20th day of April, 2017.

                                                **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE